IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 9, 2002

## STEVEN D. KING v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-19661    Arthur T. Bennett, Judge**

———————————

**No. W2001-01382-CCA-R3-PC  - Filed December 30, 2002**

———————————

The petitioner, Steven D. King, appeals the denial of his petition for post-conviction relief from his convictions of felony murder, especially aggravated kidnapping, and especially aggravated robbery. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Addie M. Burks, Memphis, Tennessee, for the appellant, Steven D. King.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Alonda Horne Dwyer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

In 1995, the petitioner, was convicted by a jury in the Shelby County Criminal Court of felony murder, especially aggravated kidnapping, and especially aggravated robbery.  In our opinion on direct appeal, this court set out the following facts underlying the convictions:

> On June 8, 1992, at approximately 6:00 P.M., the Memphis Police Department was notified of the disappearance of the 65-year-old victim, Mary Cuches, who was last seen a few hours earlier driving a blue 1984 Buick LaSabre. Within minutes, Officer Emmett Ward found the car and four occupants at a shopping mall. The driver of the vehicle sped away before eventually stopping in a church parking lot. Two black male occupants fled, leaving two young females in the backseat of the stolen vehicle.

Earlier that afternoon, between 3:30 and 4:00 P.M., sisters Nakisisa and Tametrice Brown saw the [petitioner] and two of his companions outside their apartment building; he explained that he was driving his aunt's car. His companions, Tyrone James and Greg Jackson, left for fifteen or twenty minutes and then returned for the [petitioner]. About one and one-half hours later, the [petitioner] and James returned and invited the sisters to join them at a McDonald's Restaurant. From there, they went to the mall where they were discovered by the police.

At trial, Nakisisa Brown testified that she had seen the [petitioner] hand Jackson a pistol before Jackson left with James; when he got back, Jackson returned it to the [petitioner] who then took it to a neighbor's house. Ms. Brown recalled that she thought the [petitioner] was joking when he said "there was a dead woman in the back of the trunk."

When he learned the next morning from his mother that he was wanted by police, the [petitioner], age seventeen, contacted authorities. During an hour of questioning, he signed a statement acknowledging that he, Jackson, and James saw the victim in the Kroger parking lot, put her in the trunk, and stole her car. The [petitioner] confessed that he shot the victim with a .22 caliber revolver when, about thirty minutes after her abduction, the victim banged noisily on the trunk of her car. The [petitioner] told officers that Jones and Jackson disposed of the body "in the woods."

The victim, found in a heavily wooded area, had been shot in the neck and behind the right ear. A pathologist determined that either of the wounds could have been fatal. There were bloodstains in the trunk of her car.

The police located the pistol, serial number 44446; it contained six live rounds and one spent round. Expert testimony established that one of two bullets taken from the body was fired from this .22 pistol. The other bullet had too much damage for an accurate assessment.

When called as a defense witness, James invoked his right to remain silent. The [petitioner] did not testify.

State v. Steven D. King, No. 02C01-9509-CR-00280, 1997 Tenn. Crim. App. LEXIS 95, at **2-4 (Jackson, Feb. 4, 1997).

The petitioner was sentenced to life in prison for the felony murder conviction, twenty-five years incarceration for the especially aggravated kidnapping conviction, and twenty-three years for the especially aggravated robbery conviction. The trial court ordered that the sentences for the especially aggravated kidnapping conviction and the especially aggravated robbery conviction were to be served concurrently, but consecutively to the sentence for the murder conviction. The petitioner's convictions were affirmed by this court on February 4, 1997. Id. The petitioner did not file an application for permission to appeal to the supreme court.

On March 3, 1998, the petitioner filed a petition for post-conviction relief, alleging ineffective assistance of counsel. In support of his claim, the petitioner alleged numerous grounds for relief. On March 17, 1998, the post-conviction court entered an order dismissing the petition, concluding that the petition was not timely filed. Subsequently, the petitioner filed a motion to reopen his petition, asserting that his petition had been given to prison authorities for mailing on January 28, 1998, and was therefore timely filed. The post-conviction court appointed counsel for the petitioner and an evidentiary hearing was held on February 2, 2001.

The petitioner asserted in his petition that trial counsel had provided ineffective assistance of counsel by, *inter alia*, presenting inarticulate and obtuse opening and closing statements; failing to properly cross-examine witnesses; failing to disclose relevant evidence; allowing false and misleading evidence to be presented to the jury; improperly investigating the case; limiting the petitioner's input on the proceedings; failing to object to the authenticity of evidence; making incorrect and inflammatory statements to the jury; failing to interview and subpoena witnesses; inadequately preparing and using pretrial discovery; and failing to impeach key witnesses. The petitioner also alleged that trial counsel subjected petitioner to "coercion, threats, conjecture, intimidation and manipulation."

The petitioner testified at the post-conviction hearing that he provided counsel with the names, addresses, and telephone numbers of witnesses who would testify at trial. The petitioner also asked counsel to contact his mother, Barbara Jones, and his sister, Chakita Jones. According to the petitioner, counsel promised to speak with them and also promised to subpoena witnesses. On the day of trial, "[t]hey were sitting there, but they didn't testify." The petitioner also claimed that counsel assured him that he had spoken with his family. However, when the petitioner spoke with his family, "they haven't heard from him."

The petitioner asserted that counsel failed to visit him in jail, estimating that he saw counsel only four or five times while he was in jail awaiting trial. He acknowledged that counsel visited on the day before each court hearing. The petitioner also complained that he and counsel "wasn't getting along. We wasn't communicating right. And the things that I was asking for him to say to the witness . . . he weren't saying them. The things I was asking him to do, he wasn't doing." Specifically, the petitioner noted that he needed his mother to testify that when he was arrested she was not notified. The petitioner was a minor at the time of his arrest. His sister would also have testified regarding his mother's lack of notice.

The petitioner alleged that trial counsel prevented him from testifying at trial. He complained that trial counsel told him he should not testify and he was not aware that he had a choice. According to the petitioner, "[counsel] is the one that was calling the shots." The petitioner believed that his testimony would have been beneficial. The petitioner conceded that at trial he advised the trial court that he did not want to testify and that he had not been threatened or intimidated.

The petitioner further asserted that trial counsel made numerous errors during trial. He contended that during opening and closing arguments, trial counsel allowed the District Attorney "to say some things that was really missing, misconduct for a courtroom." Specifically, the petitioner objected to the District Attorney's statement in his closing argument that "there is a Stephen King that writes scary movies but this is the Steven King that make[s] them." Moreover, trial counsel failed to object to the statement. However, the petitioner was unable to relate other specific concerns, explaining, "I never got a chance to see [a] transcript on the opening and closing statement because [trial counsel] didn't order them."

Additionally, the petitioner maintained that trial counsel's argument regarding the murder weapon was ineffective. Prior to trial, the gun used to kill the victim was mistakenly destroyed by the police department. Although the petitioner acknowledged that trial counsel raised the issue in pretrial motions, the petitioner contended that counsel "could have argued that issue better than what he done. Because what he was telling me before we went to court, every day before we go to court was a different thing from what he was saying to the judge."

Next, the petitioner alleged that trial counsel did not properly cross-examine numerous witnesses. The petitioner recalled that during trial he took notes and passed his questions or concerns to trial counsel. However, counsel failed to respond. Specifically, the petitioner noted his concerns regarding trial counsel's cross-examination of Narkeshia Brown.[1] The petitioner related that, "I needed him to ask her about like the statement that she made. I say, she seen me in a car or seen me give someone a gun. And I asked him to ask her about the questions but he didn't." The petitioner was also concerned with counsel's cross-examination regarding the disappearance of the murder weapon.

The petitioner further contended that trial counsel failed to disclose relevant evidence, including the results of fingerprint and gunpowder residue tests. Additionally, he alleged that trial counsel failed to prepare and properly use pretrial discovery. On cross-examination, the petitioner conceded that trial counsel provided copies of discovery, a copy of his confession, and a copy of the trial transcript.

Finally, the petitioner alleged that trial counsel subjected him to "coercion, threats, conjecture, intimidation and manipulation." However, the petitioner was unable to recall specific

---

[1] The trial transcript reflects that the first name of this witness is "Nakisisa." However, the record is clear that Nakisisa and Narkeshia Brown are the same individual.

details of such conduct. Describing how trial counsel's actions were coercive or manipulative, the petitioner testified, "Because he knew I didn't – he knew that I didn't understand what was going on, but yet, still, he kept telling me everything was all right. He knew it wasn't. He kept misleading me, telling me what I should do." The petitioner also complained that trial counsel was unresponsive, "And then when I call him or try to talk to him, he's saying hold on, like he didn't even want to talk to me, like he just constantly pushing me off."

At the conclusion of the petitioner's testimony, post-conviction counsel advised the court that the petitioner had "indicat[ed]" to her that Beverly Reed and Chakita Jones were present and willing to testify that they had attempted to call trial counsel to "inquire about the case." Additionally, Jones would testify that "she was aware when the [petitioner] was arrested. And that they were not present or they were not called when the [petitioner's] statement was taken and no family members were notified with regard to the statement." The post-conviction court noted that the issue regarding the suppression of the petitioner's statement had been addressed by the trial court in pretrial motions and had also been addressed in the petitioner's direct appeal; therefore, the issue was moot.

Trial counsel testified that he had practiced law since 1980 and had represented defendants in approximately thirty-five to fifty murder cases. He was appointed to represent the petitioner in September 1993. He filed a motion to suppress the petitioner's statement to police on the basis that the petitioner, who was a minor at the time of his arrest, did not have a parent or guardian present with him at the time he gave his statement at juvenile court. He recalled that there was a "highly contested" and lengthy hearing on the motion. Trial counsel specifically recalled speaking with the petitioner's mother; however, he described their contact as sporadic. He was aware that the petitioner's mother was not present when the statement was given. Nonetheless, he noted that the trial court determined that because of the petitioner's lengthy juvenile record, the petitioner was aware of his rights and the presence of a parent or guardian was unnecessary. The issue was also addressed in the petitioner's direct appeal.

Trial counsel testified that he advised the petitioner of his right to testify. He recalled that the petitioner was asked on the record if he understood that he had a right to testify and that "nobody can take that right away from him, not even myself."

Trial counsel testified that the issue of the missing gun was raised at trial and on appeal. He also reviewed the discovery materials with the petitioner and in response to a request from the petitioner subpoenaed a co-defendant to testify at trial. He denied that the petitioner had asked him to subpoena other witnesses.

On cross-examination, trial counsel estimated that he visited the petitioner approximately ten to fifteen times while the petitioner was in custody. The petitioner never expressed to him concerns about his representation or asked him to contact other witnesses. Trial counsel recalled speaking with Chamika Brown who gave a statement to police implicating the petitioner and two co-defendants. Trial counsel stated that he spoke with the petitioner's mother and

noted that she was present during part of the trial. He explained that the petitioner's mother had no relevant information regarding the robbery, kidnapping, or murder. Her testimony was only relevant to the suppression issue which had been determined prior to trial.

Contrary to the petitioner's assertion that trial counsel prevented him from testifying, trial counsel asserted that the petitioner never indicated that he wanted to testify. Counsel stated that he discussed the issue with the petitioner and the "ultimate decision" was the petitioner's. Trial counsel testified that the petitioner never expressed dissatisfaction with his representation.

## II. Analysis

In a post-conviction proceeding, the petitioner bears the burden of proving the grounds raised in the petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, a claim of ineffective assistance of counsel presents a mixed question of law and fact subject to de novo review. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). As such, the post-conviction court's findings of fact are entitled to a presumption of correctness unless the evidence preponderates against those findings. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court and, on appeal, the burden is on the petitioner to prove that the evidence preponderates against the post-conviction court's findings. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). However, a post-conviction court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are subject to a purely de novo review with no presumption of correctness. Fields, 40 S.W.3d at 458.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

The petitioner contends that the post-conviction court erred in finding that he received effective assistance of counsel. We disagree. The post-conviction court noted that the issues regarding suppression of the petitioner's statement and the absence of the murder weapon had been addressed in the petitioner's direct appeal and were moot. Our review of the petitioner's direct appeal confirms the findings of the post-conviction court. On appeal, this court addressed the issue of the admission of the petitioner's statement, specifically acknowledging that the petitioner's mother was not present when his statement was given. However, this court concluded that considering the totality of the circumstances, the petitioner's confession was the result of a knowing and intelligent waiver of his constitutional rights.

With regard to the petitioner's allegations that trial counsel failed to contact or subpoena witnesses, the post-conviction court noted the testimony of trial counsel that he spoke with the petitioner's mother several times. Counsel explained that he chose not to have her testify because she had no relevant evidence regarding the offenses and would not be helpful. Additionally, counsel testified that the only witness petitioner asked him to subpoena was a co-defendant. Although counsel subpoenaed the co-defendant, he asserted his Fifth Amendment privilege and refused to testify.

As to the petitioner's claim that counsel prevented him from testifying at trial, the post-conviction court found that trial counsel advised the petitioner of the consequences of testifying but left the ultimate decision to the petitioner. Moreover, counsel conducted a voir dire outside the presence of the jury to determine if the petitioner was aware of his right to testify. The petitioner assured the trial court that he did not want to testify.

Additionally, the post-conviction court concluded that although the petitioner claimed that trial counsel's opening and closing arguments were improper, the petitioner was unable to support his claim. Likewise, the post-conviction court found that the petitioner's claims that trial counsel limited his input on trial proceedings and failed to disclose relevant evidence were unfounded.

In addressing the petitioner's claim that he was coerced, intimidated, threatened, and manipulated by trial counsel, the post-conviction court noted that the petitioner admitted that counsel had not made any threats against him. Additionally, the petitioner was unable to testify as to any specific actions of counsel which would support his claim.

The post-conviction court chose to accredit the testimony of trial counsel, finding that the petitioner failed to meet his burden of proving his claim by clear and convincing evidence and that the petitioner's allegations were without merit. The evidence does not preponderate against the findings of the trial court. The petitioner has not shown that counsel was ineffective. Moreover, the petitioner has failed to show that he was prejudiced by counsel's actions.

## III. Conclusion

In summary, we conclude that the post-conviction court did not err in finding that the petitioner received effective assistance of counsel.  Accordingly, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE